BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICE OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Tel: (661) 586-3724
brent@lawofficenewell.com

Attorney for Plaintiffs
Little Manila Rising,
Medical Advocates for Healthy Air,
and Sierra Club

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE MANILA RISING, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB, <br><br>     Plaintiffs, <br><br>   v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency, and MICHAEL MARTUCCI, in his official capacity as Acting Regional Administrator for Region 9 of the United States Environmental Protection Agency, <br><br>     Defendants. | ) Case No. <br> ) <br> ) <br> ) <br> ) **COMPLAINT FOR INJUNCTIVE AND** <br> ) **DECLARATORY RELIEF** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

COMPLAINT

**INTRODUCTION**

1.     Plaintiffs Little Manila Rising, Medical Advocates for Healthy Air, and the Sierra Club (collectively "Air Advocates") file this Clean Air Act citizen suit to compel Defendants to perform their nondiscretionary duty and protect public health in the San Joaquin Valley of California.

2.     Air pollution in the San Joaquin Valley is a public health crisis. The American Lung Association ranks Valley counties among the worst in the United States for fine particulate matter with an aerodynamic diameter of 2.5 microns or less ("PM2.5") and ozone.

3.     The Clean Air Act is a model of cooperative federalism, whereby EPA sets health-based National Ambient Air Quality Standards and the states develop the plans and strategies to attain those standards by the applicable attainment dates. States submit their plans and strategies to EPA for review and approval as part of the California State Implementation Plan ("SIP"). EPA shall approve a SIP revision if it meets the Act's minimum requirements. EPA and citizens may enforce the EPA-approved SIP as a matter of federal law to hold states and regulated entities accountable.

4.     Defendants United States Environmental Protection Agency ("EPA"), Lee Zeldin, and Michael Martucci have violated, and continue to violate, the Clean Air Act by failing to approve, disapprove, or partially approve/disapprove the San Joaquin Valley Unified Air Pollution Control District 2024 Plan for the 2012 Annual PM2.5 Standard ("2024 PM2.5 Plan"), California Air Resources Board Staff Report entitled "Review of the San Joaquin Valley 2024 Plan for the 2012 12 $\mu g/m3$ Annual PM2.5 Standard" ("Staff Report"), and California Air Resources Board Resolution 24-10.

5.     Defendants shall take final action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 by full or partial approval or disapproval, by February 22, 2026.

6.     To date, Defendants have failed to take final action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10.

**JURISDICTION**

7.     This Court has jurisdiction over this action to compel the performance of a nondiscretionary duty pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

8.     The declaratory and injunctive relief Air Advocates request is authorized by 28 U.S.C. §§

COMPLAINT

1

2801(a) and 2202, and 42 U.S.C. § 7604.

## NOTICE

9. On March 4, 2026, Air Advocates provided Defendants EPA, Zeldin, and Martucci written notice of the claims stated in this action at least 60 days before commencing this action (hereafter "Notice Letter"), as required by Clean Air Act section 304(b)(2), 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.2 and 54.3. A copy of the Notice Letter, sent by certified mail, return receipt requested, is attached as Exhibit 1. Although more than 60 days have elapsed since Air Advocates provided written notice, EPA has failed to take final action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10. EPA has violated and continues to violate the Clean Air Act.

## VENUE

10. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1), because the Acting Regional Administrator for Region 9 is located in San Francisco County and because EPA's alleged violations relate to the duties of the Regional Administrator in San Francisco.

## INTRADISTRICT ASSIGNMENT

11. Because the failure to perform a nondiscretionary duty alleged in this Complaint relates to the duties of the Acting Regional Administrator located in San Francisco County, assignment to the San Francisco Division or the Oakland Division of this Court is proper under Civil L.R. 3-2(c) and (d).

## PARTIES

12. Plaintiff LITTLE MANILA RISING is a nonprofit corporation organized and existing under the laws of the State of California, and based in Stockton, California. LITTLE MANILA RISING serves the South Stockton community, developing equitable solutions to the effects of historical marginalization, institutionalized racism, and harmful public policy. LITTLE MANILA RISING offers a wide spectrum of programs that address education, environment, redevelopment, public health, and air quality. LITTLE MANILA RISING values all people's unique and diverse experiences and wishes to see the residents of South Stockton enjoy healthy, prosperous lives.

13. Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR is a nonprofit organization organized and existing under the laws of the State of California, and based in Fresno, California. MEDICAL ADVOCATES FOR HEALTHY AIR brings this action on behalf of itself and its members.

COMPLAINT

MEDICAL ADVOCATES FOR HEALTHY AIR's members consist of medical professionals living in the San Joaquin Valley who regularly treat patients suffering from respiratory ailments that are caused or exacerbated by the Valley's unhealthy levels of air pollution. The mission of MEDICAL ADVOCATES FOR HEALTHY AIR is to advocate for the expeditious attainment of state and federal health-based air quality standards in the San Joaquin Valley through public education, litigation, and other means.

14.    Plaintiff SIERRA CLUB is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in San Francisco, California. SIERRA CLUB brings this action on behalf of itself and its members. As a national organization dedicated to the protection of public health and the environment, including air quality, SIERRA CLUB has members living in all eight counties comprising the San Joaquin Valley.

15.    Plaintiffs LITTLE MANILA RISING, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB are persons within the meaning of section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

16.    The Clean Air Act violations alleged in this Complaint have injured and continue to injure Air Advocates' members.

17.    Members of Plaintiffs LITTLE MANILA RISING, MEDICAL ADVOCATES FOR HEALTHY AIR and SIERRA CLUB live, raise their families, work, and recreate in the San Joaquin Valley. They are adversely affected by exposure to levels of PM2.5 and ozone air pollution that exceed the health-based National Ambient Air Quality Standards. The adverse effects of such pollution include actual or threatened harm to their health, their families' health, their professional, educational, and economic interests, and their aesthetic and recreational enjoyment of the environment in the San Joaquin Valley.

18.    Members of Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR are medical professionals who treat patients suffering from PM2.5 and ozone related health effects, have participated in substantial research on the health effects of PM2.5 and ozone, and are concerned about the adverse health effects that PM2.5 and ozone have on their patients, sensitive groups, and the public.

19.    EPA's failure to take action on the 2024 PM2.5 Plan, the Staff Report, and Resolution

COMPLAINT

3

24-10 as alleged in this Complaint deprives Plaintiffs' members of certain procedural rights associated with EPA's required action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 including notice of, and opportunity to comment on, EPA's proposed action and judicial review to challenge any EPA final action.

20.     EPA's failure to take action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 as alleged in this Complaint causes members' injuries because Defendants have failed to implement the Clean Air Act's remedial scheme, including ensuring the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 meet all Clean Air Act requirements and are enforceable by EPA and citizens.

21.     A failure to attain the 2012 annual PM2.5 national ambient air quality standard is reasonably foreseeable given the historical record of PM2.5 design value data and repeated failures to attain the National Ambient Air Quality Standards in the San Joaquin Valley.

22.     The injunctive relief requested in this lawsuit would redress members' injuries by compelling Defendants to take final action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10. Such action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 would ensure the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 comply with all applicable requirements of the Clean Air Act.

23.     The injunctive relief requested in this lawsuit would redress members' procedural injuries by providing notice and an opportunity to comment on EPA's proposed action to approve, disapprove, or approve in part and disapprove in part, the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10.

24.     The injunctive relief requested in this lawsuit would redress members' procedural injuries by compelling EPA to take final action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10. EPA final action will allow Air Advocates to secure any necessary judicial review as provided by Clean Air Act section 307(b)(1), 42 U.S.C. § 7607(b)(1).

25.     The declaratory relief requested in this lawsuit would redress Air Advocates members' injuries by declaring that Defendants have a duty to take final action on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 by February 22, 2026. Declaratory relief would further redress these injuries by declaring that Defendants have violated their duty.

COMPLAINT

4

26.    Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the federal agency Congress charged with implementation and enforcement of the Clean Air Act. As described below, the Act assigns to the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY certain nondiscretionary duties.

27.    Defendant LEE ZELDIN is sued in his official capacity as Administrator of the United States Environmental Protection Agency. LEE ZELDIN is charged in that role with taking various actions to implement and enforce the Clean Air Act, including the actions sought in this Complaint.

28.    Defendant MICHAEL MARTUCCI is sued in his official capacity as Acting Regional Administrator for Region 9 of the United States Environmental Protection Agency. MICHAEL MARTUCCI is responsible for implementing and enforcing the Clean Air Act in Region 9, including the actions sought in this Complaint. Region 9 includes California and the San Joaquin Valley air basin.

## STATUTORY FRAMEWORK

29.    The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of the National Ambient Air Quality Standards. *See* 42 U.S.C. §§ 7401-7515. Under the Act, EPA has set health-based standards for six pollutants, including ozone and PM2.5. States must adopt a State Implementation Plan ("SIP") that contains enforceable emissions limitations necessary to attain the standards and meet applicable requirements of the Act. 42 U.S.C. §§ 7401(a)(1), (a)(2)(A); 7502(c)(6). States must submit all such plans and plan revisions to the EPA. 42 U.S.C. § 7410(a)(1).

30.    State Implementation Plans must include enforceable emissions standards and limitations necessary to attain the NAAQS by the applicable attainment date, must demonstrate reasonable further progress, and must include contingency measures to take effect if the plan fails to meet reasonable further progress or attain the NAAQS by the applicable attainment date. 42 U.S.C. § 7502(c).

31.    State Implementation Plans must demonstrate that the state's control strategy will ensure attainment of the standard by the applicable attainment deadline. *See* 42 U.S.C. § 7511a(c)(2)(A); *see also* 40 C.F.R. § 51.112(a) ("Each plan must demonstrate that the measures, rules, and regulations contained in it are adequate to provide for the timely attainment and maintenance of the national standard that it implements.").

COMPLAINT

5

32. A serious PM2.5 nonattainment areas shall attain the standard as expeditiously as practicable but no later than ten years after designation. 42 U.S.C. § 7513(c)(2); 40 C.F.R. § 51.1004(a)(2)(i).

33. A serious PM2.5 nonattainment area may request a further extension of the ten-year attainment deadline—up to five years—but such an area must adopt "the most stringent measures" and demonstrate attainment by the most expeditious alternative date practicable. 42 U.S.C. § 7513(e); 40 C.F.R. §§ 51.1005(b), 51.1010(b). The Act defines MSM as "the most stringent measures that are included in the [SIP] of any State or are achieved in practice in any State, and can feasibly be implemented in the area." 42 U.S.C. § 7513(e).

34. Within 60 days of EPA's receipt of a proposed State Implementation Plan or SIP revision, the Clean Air Act requires EPA to determine whether the submission is sufficient to meet the minimum criteria established by EPA. 42 U.S.C. § 7410(k)(1)(B). If EPA fails to make this "completeness" finding, the proposed SIP revision becomes complete by operation of law six months after a state submits the revision. If EPA determines that the proposed SIP revision does not meet the minimum criteria, the state is considered to have not made the submission. 42 U.S.C. 7410(k)(1)(C).

35. Within twelve months of an EPA finding that a proposed State Implementation Plan or SIP revision is complete (or deemed complete by operation of law), EPA must act to approve, disapprove, or approve in part and disapprove in part, the proposed SIP or SIP revision. 42 U.S.C. § 7410(k)(2).

36. If EPA disapproves the State Implementation Plan or SIP revision, in whole or in part, then the Clean Air Act requires EPA to impose sanctions against the offending state or region, including increased offsets for new and modified major stationary sources or a prohibition on the use of federal highway funds, unless the state submits revisions within 18 months. 42 U.S.C. §§ 7509(a), (b). EPA must impose both offsets and highway funding sanctions within 24 months unless the state has corrected the deficiency. Moreover, the Act requires EPA to promulgate a Federal Implementation Plan within 24 months of disapproval unless the state has corrected the deficiency, and EPA has approved the revision. 42 U.S.C. § 7410(c).

37. Once EPA approves a State Implementation Plan or SIP revision, the state and any

COMPLAINT

6

regulated person must comply with the emissions standards and limitations contained in the SIP, and all such standards and limitations become enforceable as a matter of federal law by EPA and citizens. 42 U.S.C. § 7413; 7604(a), (f).

38. If EPA fails to perform a non-discretionary duty, including failing to take final action on a proposed State Implementation Plan or SIP revision by the Clean Air Act deadline, then the Act allows any person to bring suit to compel EPA to perform its non-discretionary duty. 42 U.S.C. § 7604(a)(2).

## FACTUAL BACKGROUND

### Fine Particulate Matter (PM2.5) Background

39. PM2.5 is a directly emitted pollutant and forms secondarily in the atmosphere by the precursor pollutants NOx, ammonia, sulfur oxides, and VOC. Secondary PM2.5 forms primarily during the winter in the San Joaquin Valley.

40. Short-term exposure to PM2.5 pollution causes premature death, causes decreased lung function, exacerbates respiratory disease such as asthma, and causes increased hospital admissions. Long-term exposure causes development of asthma in children, causes decreased lung function growth in children, exacerbates respiratory disease such as asthma, increases the risk of death from cardiovascular disease, and increases the risk of death from heart attacks. Individuals particularly sensitive to PM2.5 exposure include older adults, people with heart and lung disease, and children.

41. According to the American Lung Association's State of the Air 2026 report, the San Joaquin Valley counties of Kern, Tulare, Fresno, and Kings rank as the third, fifth, and seventh (tied) most polluted counties in the United States for short-term exposure to PM2.5, respectively. For long-term exposure to PM2.5, the report ranks Kern, Fresno, Tulare, and Kings as the first, fourth, fifth, and eighth most polluted counties in the United States, respectively.

42. On July 18, 1997, the EPA established the national primary annual PM2.5 NAAQS of 15 $\mu g/m^3$ ("1997 annual PM2.5 standard") after considering evidence from "numerous health studies demonstrating that serious health effects" occur from exposures to PM2.5. *See* 81 Fed. Reg. 6936 (February 9, 2016); *see also* 62 Fed. Reg. 38652 (July 18, 1997); 40 C.F.R. § 50.7.

43. In 2006, to better protect the public from short-term exposures, EPA increased the stringency of the national primary annual 24-hour PM2.5 NAAQS by lowering the allowable ambient

COMPLAINT

7

concentration from 65 µg/m$^3$ to 35 µg/m$^3$. 71 Fed. Reg. 61144, 61145 (Oct. 17, 2006) ("2006 24-hour PM2.5 standard").

44. Effective March 18, 2013, the EPA strengthened the national primary annual PM2.5 NAAQS by lowering the level from 15.0 µg/m$^3$ to 12.0 µg/m$^3$ ("2012 annual PM2.5 standard"). 78 Fed. Reg. 3086 (Jan. 13, 2013); 40 C.F.R. § 50.18.

45. The San Joaquin Valley is a serious PM2.5 nonattainment area for the 1997 annual PM2.5 standard, the 2006 24-hour standard, and the 2012 annual PM2.5 standard.

46. In 2019, California submitted a SIP revision purporting to meet SIP requirements for the 1997 annual PM2.5 standard, the 2006 24-hour standard, and the 2012 annual PM2.5 standard ("2018 PM2.5 Plan").

47. Effective December 27, 2021, EPA found that the Valley could not practicably attain the 2012 Annual PM2.5 Standard by the moderate area attainment date of December 31, 2021, reclassified the Valley as a serious area, and set December 31, 2025, as the applicable attainment date. 86 Fed. Reg. 67343, 67347 (Nov. 26, 2021).

48. On December 29, 2021, EPA published a proposed approval of the 2018 PM2.5 Plan as meeting all planning requirements for the San Joaquin Valley as a serious nonattainment area for the 2012 annual standard except for contingency measures, which EPA proposed to disapprove. 86 Fed. Reg. 74311 (Dec. 29, 2021).

49. After receiving adverse comments on the proposed approval of the 2018 PM2.5 Plan as it pertains to the 2012 annual PM2.5 standard, EPA published a proposal to disapprove the Plan for several reasons, including California's failure to demonstrate that the plan would attain the 2012 annual PM2.5 Standard by December 31, 2025. 87 Fed. Reg. 60494, 60530 (Oct. 5, 2022).

50. In a letter dated October 27, 2022, the California Air Resources Board withdrew the 2018 PM2.5 Plan as it pertains to the 2012 annual PM2.5 standard from inclusion in the State Implementation Plan.

51. On June 20, 2024, the San Joaquin Valley Unified Air Pollution Control District adopted the 2024 PM2.5 Plan.

52. On July 25, 2024, the California Air Resources Board approved the 2024 PM2.5 Plan and

COMPLAINT

8

adopted the Staff Report and Resolution 24-10.

53.    The 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 request a five-year extension of the December 31, 2025 attainment date to December 31, 2030 as authorized by 42 U.S.C. § 7513(e).

54.    On August 22, 2024, the California Air Resources Board submitted the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 as a SIP revision.

55.    The San Joaquin Valley has not attained the 2012 annual PM2.5 standard. EPA data show PM2.5 design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, 2021-2023, and 2022-2024 at 16.9 $\mu g/m^3$, 20.3 $\mu g/m^3$, 18.8 $\mu g/m^3$, 18.8 $\mu g/m^3$, 16.2 $\mu g/m^3$, and 14.7 $\mu g/m^3$, respectively, well above the 12 $\mu g/m^3$ design value necessary to attain the 2012 annual PM2.5 standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 2.

56.    The San Joaquin Valley has not attained the 2006 24-hour PM2.5 standard. EPA data show PM2.5 design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, 2021-2023, and 2022-2024 at 64 $\mu g/m^3$, 72 $\mu g/m^3$, 66 $\mu g/m^3$, 65 $\mu g/m^3$, 48 $\mu g/m^3$, and 48 $\mu g/m^3$ respectively, well above the 35 $\mu g/m^3$ design value necessary to attain the 2006 24-hour PM2.5 standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 3.

57.    On April 2, 2026, EPA published a proposed finding that the San Joaquin Valley failed to attain the 2006 24-hour PM2.5 standard. 91 Fed. Reg. 16614 (Apr. 2, 2026).

58.    Pursuant to a consent decree entered in *Committee for a Better Arvin v. U.S. Environmental Protection Agency*, No. 3:25-cv-07375-EMC (N.D. Cal.) (Dkt. No. 31), EPA shall take final action no later than June 1, 2026 on the finding of failure to attain the 2006 24-hour PM2.5 standard.

**Ozone Background**

59.    Ground-level ozone is formed by a reaction between NOx and VOC in the presence of heat and sunlight. Unlike ozone in the upper atmosphere which is formed naturally and protects the Earth from ultraviolet radiation, ozone at ground level is primarily formed from anthropogenic pollution.

COMPLAINT

60.    Short-term exposure to ozone irritates lung tissue, decreases lung function, exacerbates respiratory disease such as asthma and Chronic Obstructive Pulmonary Disease (COPD), increases susceptibility to respiratory infections such as pneumonia, all of which contribute to an increased likelihood of emergency department visits and hospitalizations. Short-term exposure to ozone also increases the risk of premature death, especially among older adults. Long-term exposure to ozone causes asthma in children, decreases lung function, damages the airways, leads to development of COPD, and increases allergic responses.

61.    According to the American Lung Association's State of the Air 2026 report, the San Joaquin Valley counties of Tulare, Kern, and Fresno rank as the fourth, fifth, and seventh most ozone-polluted counties in the United States, respectively.

62.    Effective June 4, 2010, EPA reclassified the San Joaquin Valley to an extreme ozone nonattainment area for the 1997 8-hour ozone standard and established June 15, 2024 as the applicable attainment date. 75 Fed. Reg. 24409, 24415 (May 5, 2010).

63.    Effective July 20, 2012, EPA designated the San Joaquin Valley as an extreme nonattainment area for the 2008 8-hour ozone standard. 77 Fed. Reg. 30088, 30092 (May 21, 2012); 40 C.F.R. § 51.1103(d). As an extreme nonattainment area, the Valley must attain the standard as expeditiously as practicable but no later than July 20, 2032. 40 C.F.R. § 51.1103(a); 80 Fed. Reg. 12264, 12268 (March 6, 2015).

64.    Effective December 28, 2015, EPA revised "the level of the [8-hour ozone] standard to 0.070 ppm to provide increased public health protection against health effects associated with long- and short-term exposures" and promulgated the national primary NAAQS for ozone ("2015 8-hour ozone standard"). 80 Fed. Reg. 65292, 65294 (Oct. 26, 2015); 40 C.F.R. § 50.19.

65.    Effective August 3, 2018, EPA classified the San Joaquin Valley as an extreme nonattainment area for the 2015 8-hour ozone standard and established an August 3, 2038 attainment date. 83 Fed. Reg. 25776 (June 4, 2018).

66.    Effective October 27, 2025, EPA found that the San Joaquin Valley failed to attain the 1997 8-hour ozone standard by the December 15, 2024 attainment date. 90 Fed. Reg. 46065 (Sept. 25, 2025).

COMPLAINT

## FIRST CLAIM FOR RELIEF

### Failure to Perform a Non-Discretionary Duty

### to Act on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10

### (42 U.S.C. § 7410(k)(2))

67. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-66.

68. On August 22, 2024, the California Air Resources Board submitted the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 as a SIP revision.

69. On February 22, 2025, the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 became complete by operation of law.

70. Defendants have a mandatory duty to act on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 no later than February 22, 2026. 42 U.S.C. § 7410(k)(2).

71. Defendants have failed and continue to fail to act on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10.

72. By failing to act on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10, Defendants have violated and continue to violate their nondiscretionary duty to act on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

73. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). Defendants' violation of the Act is ongoing and will continue unless remedied by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

A. DECLARE that Defendants have a duty to act on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10 by February 22, 2026;

B. DECLARE that Defendants have violated and continue to violate the Clean Air Act by failing to act on the 2024 PM2.5 Plan, the Staff Report, and Resolution 24-10;

C. ISSUE preliminary and permanent injunctions directing the Defendants to act on the 2024

COMPLAINT

PM2.5 Plan, the Staff Report, and Resolution 24-10 by November 15, 2026;

D.    RETAIN jurisdiction over this matter until such time as the Defendants have complied with their nondiscretionary duties under the Clean Air Act;

E.    AWARD to Plaintiffs their costs of litigation, including reasonable attorney's and expert witness fees; and

F.    GRANT such additional relief as the Court may deem just and proper.

Dated: May 5, 2026                              Respectfully Submitted,

                                                LAW OFFICE OF BRENT J. NEWELL

                                                /s/ Brent J. Newell
                                                Brent J. Newell
                                                Attorney for Plaintiffs

COMPLAINT